# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Larry Bert Gray,**
**Claimant Below, Petitioner**

**vs.)      No. 22-0303    (**BOR Appeal No. 2057461)
                                    (JCN:  2003036247)

**Performance Coal Company, C/O ANR,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Larry Bert Gray appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent Performance Coal Company, C/O ANR, filed a timely response.[1] The issue on appeal is medical treatment. The claims administrator denied authorization for (1) an L4-L5 laminectomy with a left microdiscectomy, including surgeon and assistant surgeon fees; (2) preadmission testing; (3) a CT scan of the lumber spine prior to surgery; (4) medical and cardiac clearance from the primary care provider prior to surgery; and (5) post-operative office visit after surgery on November 23, 2020. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its September 16, 2021, order. The order was affirmed by the Board of Review on March 18, 2022. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

On January 20, 2003, petitioner, a coal miner, completed an Employees' and Physicians' Report of Injury stating that he fell down steps at work. The physician's portion of the form indicated that petitioner suffered various injuries, including a back sprain. The West Virginia Workers' Compensation Division approved petitioner's application for benefits on February 6, 2003.

Prior to the January 20, 2003, injury in the instant claim, petitioner had sustained a work-related back injury that was the subject of claim no. 19910016801. On July 19, 1991, petitioner underwent lumbar micro-laminectomies. In a July 22, 1991, discharge summary, Melchor Vidal, M.D., found that petitioner was doing well. Dr. Vidal noted that a preoperative CT scan showed disc bulging between L4-L5 and a herniated disc between L5-S1. Dr. Vidal stated that petitioner's pain "is worse on . . . coughing . . . ."

---

[1]Petitioner is self-represented, and respondent is represented by Sean Harter.

1

With regard to the January 20, 2003, injury in the instant claim, petitioner underwent an MRI of the lumbar spine on February 2, 2003. David Abramowitz, M.D., found that there was "[n]o conclusive evidence of a recurrent disc herniation" at either L4-L5 or L5-S1. There was a mild disc bulge at L4-L5 and a narrowing of the disc space with disc bulging anteriorly at L5-S1. At each location, the MRI also showed postsurgical changes.

Petitioner underwent bilateral electrodiagnostic studies on the lower extremities on June 17, 2003. The results were normal. Specifically, H. S. Ramesh, M.D., found that there was no evidence of myopathy, peroneal neuropathy, tibial neuropathy, peripheral neuropathy, or lumbosacral radiculopathy.

Petitioner underwent an independent medical evaluation with Paul Bachwitt, M.D., on July 22, 2004. In his report dated August 3, 2004, Dr. Bachwitt noted that for the earlier back injury in claim no. 19910016801, petitioner received a 10% permanent partial disability award. With regard to the January 20, 2003, injury in the instant claim, petitioner was at maximum medical improvement. Dr. Bachwitt opined that petitioner had 8% impairment for the lumbar spine. Dr. Bachwitt stated that any prior permanent partial disability award for an identical body part should be deducted from his impairment recommendations for the January 20, 2003, injury.

Petitioner underwent an independent medical evaluation with Prasadarao B. Mukkamala, M.D., on November 15, 2005. At the time of Dr. Mukkamala's evaluation, petitioner had already been awarded a 16% permanent partial disability award for the January 20, 2003, injury in the instant claim, plus a 5% permanent partial disability award for a psychiatric component. Dr. Mukkamala found petitioner at maximum medical improvement. Dr. Mukkamala opined that petitioner had 3% impairment due to the lower back injury in the instant claim.

Petitioner was seen by John H. Schmidt III, M.D., for a surgical consultation regarding his lower back on January 30, 2008. Petitioner described pain in his lower back and left leg and hip. While petitioner's pain was worse, "[t]hese symptoms have been present for over 20 years." Dr. Schmidt noted petitioner's prior surgery in 1991. A November 11, 2007, MRI also revealed degenerative changes at L5-S1. The MRI did "not suggest evidence of recurrent or residual ruptured lumbar disc." Due to the natural history of post-laminectomy syndrome and the MRI findings, Dr. Schmitt did not recommend surgical intervention.

For pain management, petitioner treats with Francis Saldanha, M.D. Petitioner receives three facet joint injections every three months and receives an epidural injection every six months. In 2020, Dr. Saldanha referred petitioner to James Harman, D.O. Petitioner was seen by Dr. Harman on November 4, 2020, after a worsening of his symptoms following a coughing episode approximately five months earlier. An August 3, 2020, MRI showed a left paracentral disc herniation at L4-L5. Dr. Harman noted that petitioner previously underwent a right microdiscectomy at L4-L5. Dr. Harman opined that petitioner would benefit from a revision laminectomy at L4-L5 with a left L4-L5 microdiscectomy. Dr. Harman described petitioner's pain as being an eight out of ten, having "had an acute exacerbation of his pain 5 months ago during a coughing fit." On November 5, 2020, Dr. Harman requested authorization for (1) an L4-L5 laminectomy with a left microdiscectomy, including surgeon and assistant surgeon fees; (2)

2

preadmission testing; (3) a CT scan of the lumber spine prior to surgery; (4) medical and cardiac clearance from the primary care provider prior to surgery; and (5) post-operative office visit after surgery.

The claims administrator denied authorization for Dr. Harman's request on November 23, 2020. The claims administrator found that a coughing episode rather than the January 20, 2003, injury in the instant claim exacerbated petitioner's back problems. In support of his protest of the claims administrator's decision, petitioner submitted Dr. Saldanha's treatment notes from March 19, 2021. In the treatment notes, Dr. Saldanha opined that while petitioner's coughing caused his pain to flare up, the back problems date back to the January 20, 2003, injury.

In its September 16, 2021, order, the Office of Judges affirmed the claims administrator's denial of authorization for (1) an L4-L5 laminectomy with a left microdiscectomy, including surgeon and assistant surgeon fees; (2) preadmission testing; (3) a CT scan of the lumber spine prior to surgery; (4) medical and cardiac clearance from the primary care provider prior to surgery; and (5) post-operative office visit after surgery. The Office of Judges noted petitioner's history of back problems and his July 19, 1991, lumbar micro-laminectomies. The Office of Judges found that Drs. Bachwitt and Mukkamala assessed petitioner to be at maximum medical improvement with regard to the January 20, 2003, injury in the instant claim and that Dr. Schmidt recommended against surgical intervention. Furthermore, when—after an interval of twelve years—Dr. Harman requested authorization for an L4-L5 laminectomy with a left microdiscectomy, Dr. Harman attributed the acute exacerbation of petitioner's back pain to a coughing episode instead of the January 20, 2003, injury. Therefore, the Office of Judges determined that it was more likely than not that the request for authorization for an L4-L5 laminectomy with a left microdiscectomy (and associated services) was not related to the injury in the instant claim. On March 18, 2022, the Board of Review adopted the Office of Judges' findings and affirmed its order upholding the claim administrator's denial of authorization.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision affirms prior rulings by both the Workers' Compensation Commission and the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is based upon a material misstatement or mischaracterization of the evidentiary record. *See* W. Va. Code §§ 23-5-15(c) & (d). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. of Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we find no error in the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. "Pursuant to W. Va. Code § 23-4-1g(a) (2003) (Repl. Vol. 2010), a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence." Syl. Pt. 2, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). West Virginia Code of State Rules § 85-20-37.5 provides that the duration of care for a lower back sprain is estimated "not to exceed 8 weeks." Due to (1) the 2004 and 2005 findings of maximum medical improvement with regard to the January 20, 2003, injury, and (2) petitioner's history of back problems prior to the 2003 injury in the instant claim, the Office of Judges did not

3

err in finding that it was more likely than not that Dr. Harman's November 5, 2020, authorization request was not related to the instant injury.

Affirmed.

**ISSUED: October 19, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn